IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY STELLA, <br> Plaintiff, <br> v. <br> STATE OF DELAWARE, DEPARTMENT OF EDUCATION, *et al.* <br> Defendants. | C.A. NO.: 17-1591-MPT |

**MEMORANDUM**

## I. INTRODUCTION

On November 6, 2017, Anthony Stella ("Plaintiff") filed this action against the State of Delaware Department of Education ("DOE"), Sandra Waldee-Warden, and Susan Bunting, ("Defendants"), alleging violation of his First Amendment right to free speech, breach of contract, and breach of the implied covenant of good faith and fair dealing.[1] On February 5, 2018, Plaintiff filed an Amended Complaint, adding a substantive due process claim under §1983, applying the "State-Created Danger" theory, and added new Defendants: Department of Corrections, Robert Coupe, and Perry Phelps.[2] The fourth count, denial of substantive due process under the Fourteenth Amendment as delineated by the "State-Created Danger" doctrine (the

---

[1] D.I. 1 at 1-2.
[2] D.I. 18 at 83-84.

1

"§1983 claim"), is the claim currently under consideration.[3]

This action was brought following DOE's termination of Plaintiff's employment on April 4, 2017.[4] He was terminated due to communications he made regarding a prison riot on February 1, 2017, allegedly in violation of DOE communication policies.[5] Presently before the court is Defendants' partial motion to dismiss Plaintiff's substantive due process claim, count IV of Plaintiff's First Amended Complaint.[6] For the reasons stated below, Defendant's motion is granted.[7]

## II. BACKGROUND

Plaintiff was employed by the Delaware Department of Education ("DOE") as a prison education teacher responsible for development and implemention of a culinary arts program for offenders in the custody of the State's Department of Correction ("DOC").[8] Prior to this time, Plaintiff had never taught in a formal classroom setting.[9] After his start date, Plaintiff rotated every month at a different correctional institution.[10] He started at James T. Vaughn Correctional Center ("JTVCC") for three months, followed by three months at Sussex Correctional Institution, and then three months at Howard R. Young Correctional Institution.[11] Plaintiff taught three to four classes of twelve students during each rotation, with each class meeting every weekday for the

---
[3] D.I. 27.
[4] D.I. 18 at 84.
[5] *Id.* at 84-88.
[6] D.I. 27.
[7] The parties consented to the jurisdiction of this magistrate judge for this civil action. D.I. 11.
[8] D.I. 18 at 84.
[9] *Id.*
[10] *Id.* at 85.
[11] *Id.*

month.[12] At the end of the month, Plaintiff administered the ServSafe exam and students who passed with a score of 75% or higher became ServSafe certified.[13] Plaintiff's students had close to a 100% pass rate at the time of his termination.[14]

### A. THE TAKEOVER AND PLAINTIFF'S COMMUNICATIONS

On February 1, 2017, Plaintiff was teaching at JTVCC when an inmate takeover occurred in a different building at the prison.[15] Plaintiff was in lock down for five hours, confined in a room with staff members and correction officers.[16] During this time, the hostage negotiations were broadcast over the correction officers' radio enabling all in the room to hear.[17] Furthermore, the negotiations were simultaneously heard by the public on any broadband radio.[18]

On his way home, Plaintiff received a phone call from a reporter he knew at the News Journal.[19] He related to the reporter his experience during the lock down, and his account was published in an article that same night.[20] The article stated that Plaintiff was teaching in the education building when a call for a Code One occurred, which signals an attack to a correction officer, requiring the entire facility to be locked down.[21] Plaintiff closed the classroom door and continued to teach his students.[22] When he

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] D.I. 27 at 133.
[21] D.I. 18 at 86.
[22] *Id.*

3

looked out a window, he saw "a lot of commotion."[23]  Within thirty minutes into the lock

down, the prisoners were returned to their cells, and Plaintiff was removed from the

classroom to a room with other faculty.[24]  Plaintiff explained they remained in that

location for "a couple of hours" and heard the hostage negotiator negotiating with the

inmates.[25]  Plaintiff described the situation as "surreal" and "crazy", but also noted he

was "never in harm's way[.]"[26]  Eventually, he and the other non-correctional officers

were moved to another room to prevent them from overhearing the negotiations.[27]

Plaintiff alleges that after he returned home, he could not sleep due to the "very

emotional day."[28]  He then posted about the incident on his personal facebook

account.[29]  Shortly after his post, he was contacted by his DOE supervisor and

instructed to take it down, to which he promptly complied.[30]

### B. THE ADMINISTRATIVE PROCESS

On February 20, 2017, Plaintiff received a letter advising he was not authorized

to return to JTVCC or any correctional center, until the investigation into his conduct

was complete.[31]  On March 15, he received a letter informing him of the DOE's intent to

terminate his employment for violating the DOE External Communication Policy, the

DOC Public Information, Media and Community Relations Policy, and the DOC Code of

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 87.
[31] *Id.*

4

Conduct.[32]

On March 24, 2017 Plaintiff participated in a pre-termination meeting with Secretary of Education Susan Bunting.[33] On April 24, Secretary Bunting terminated Plaintiff for "just cause in the form of misconduct in office and willful neglect of duty."[34] Plaintiff appealed his termination pursuant to 14 *Del. C.* § 121(a)(5).[35] On June 22, Plaintiff underwent a hearing before a hearing officer, who subsequently upheld the DOE's decision to terminate him via a written decision dated August 31, 2017.[36]

### C. CLAIMS AND DAMAGES

On November 6, 2017, Plaintiff filed a complaint against the State of Delaware Department of Education, Susan Bunting, and Sandra Waldee-Warden (the Teaching Supervisor at JTVCC).[37] He alleged Defendants violated his First Amendment right to free speech, breached the terms of his employment contract by terminating him without just cause, and breached the implied covenant of good faith and fair dealing.[38] On December 13, 2017, Defendants filed an answer.[39] A scheduling order was entered on January 31, 2018.[40]

On February 5, 2018, Plaintiff filed an amended complaint, adding a Fourteenth Amendment substantive due process claim under §1983 based on the "State-Created

---

[32] *Id.*
[33] *Id.* at 88.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] D.I. 1 at 1-2.
[38] *Id.*
[39] D.I. 8
[40] D.I. 15.

5

Danger" theory.⁴¹  The amended complaint also added the State of Delaware Department of Corrections, Robert Coupe (former Commissioner for the DOC), and Perry Phelps (Commissioner for the DOC), as additional Defendants.⁴²

Plaintiff claimed as a result of his experiences at JTVCC and his subsequent termination, he has undergone extensive mental and emotional therapy and suffers from Post-Traumatic Stress Disorder and clinical depression.⁴³  In support of his claims, Plaintiff relies on facts contained in a 2005 Executive Task Force Report ("The Report"), an investigation into a security breakdown at JTVCC resulting in the abduction and rape of a prison counselor.⁴⁴  The Report addressed the problems at JTVCC which led to that incident and included recommendations to be implemented to prevent such a situation from reoccurring.⁴⁵  The Task Force found, among other things, that JTVCC's security policies were outdated, vague, and frequently violated.⁴⁶  The relevant recommendations included reducing excessive overtime to compensate for the shortage of security personnel, reducing the number of permissible items in cells, increasing the number of cell shakedowns per shift, and requiring pat downs, wanding, or passage through metal detectors for all inmates.⁴⁷

Plaintiff alleged that DOC failed to implement the Task Force recommendations, and if DOC had, the likelihood of the February 1, 2017 inmate takeover would have

---

⁴¹ D.I. 18 at 83.
⁴² *Id.* at 84.
⁴³ *Id.* at 87.
⁴⁴ *Id.* at 88.
⁴⁵ *Id.*
⁴⁶ *Id.*
⁴⁷ *Id.* at 89.

6

decreased dramatically.⁴⁸ Plaintiff noted that the inmates involved in the takeover had immediate access to contraband that allowed them to quickly overpower the officers.⁴⁹ He claims that if the recommendations for cell shakedowns and pat downs had been implemented, access by the inmates to the contraband weapons would have been minimized.⁵⁰ Plaintiff further argues, if Defendants had implemented the recommendations, the inmate takeover never would have occurred, he would not have been forced into lockdown and subject to emotional distress and post-traumatic injury, nor interviewed by the News Journal about his experiences, and thus, he would not have been terminated from his position.⁵¹

Plaintiff asserts that Defendants had knowledge of the risk of harm, the harm was foreseeable and it was a direct result of Defendants' actions.⁵² As a result, Plaintiff claims his constitutional right to substantive due process was denied under the Fourteenth Amendment and 42 U.S.C. §1983.⁵³ Alternatively, Defendant argues that Plaintiff has not set forth plausible facts to support a claim that the harm caused to him was foreseeable and direct, and therefore, his §1983 claim should be dismissed.⁵⁴

## III. DISCUSSION

### A. STANDARD OF REVIEW FOR MOTION TO DISMISS

FED. R. CIV. P. 12(b)(6) governs a motion to dismiss for failure to state a claim

---

⁴⁸ *Id.*
⁴⁹ *Id.*
⁵⁰ *Id.*
⁵¹ *Id.* at 90.
⁵² *Id.* at 94.
⁵³ *Id.*
⁵⁴ D.I. 27 at 134.

7

upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the pleading, not to resolve disputed facts or decide the merits of the case.[55] "The issue is not whether a [party] will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[56] A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations . . . as true, and viewing them in the light most favorable" to the non-moving party, the court determines that party is not entitled to relief.[57] While the court draws all reasonable factual inferences in the light most favorable to a claimant, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[58]

To survive a motion to dismiss, a party's factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[59] Parties are therefore required to provide the grounds of their entitlement to relief beyond mere labels and

---

[55] *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).
[56] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a [pleading] adequately states a claim, it may not be dismissed based on a district court's assessment that the [party] will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder").
[57] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).
[58] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged").
[59] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

conclusions.[60] Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[61] A claim has facial plausibility when the factual content is sufficient for the court to draw the reasonable inference that a party is liable for the misconduct alleged.[62] Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations.[63] Courts generally consider only the allegations contained in the pleading, exhibits attached, and matters of public record when reviewing a motion to dismiss.[64]

### B. STATE-CREATED DANGER THEORY OF LIABILITY UNDER §1983

Plaintiff claims that by failing to implement the recommendations which led to the inmate takeover, and ultimately his termination, Defendants denied him of his constitutional right to substantive due process under the Fourteenth Amendment and 42 U.S.C. §1983.[65] The pertinent language of §1983 states:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

---

[60] See Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).
[61] Twombly, 550 U.S. at 570; see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it'") (quoting Twombly, 550 U.S. at 555 n.3).
[62] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).
[63] Twombly, 550 U.S. at 563 (citations omitted).
[64] See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).
[65] D.I. 18 at 94.

action at law, suit in equity, or other proper proceeding for redress.[66]

Section 1983 does not on its own create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law.[67] Generally, a State has no affirmative obligation to protect its citizens from the violent acts of private individuals.[68] However, courts have recognized two exceptions to this rule, one of which is the State-Created Danger theory of liability, adopted by the Third Circuit in *Kneipp v. Tedder.*[69]

In order to successfully plead a claim under this theory, a plaintiff must show:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[70]

For the reasons set forth below, this court holds that Plaintiff failed to adequately allege all four required elements, and additionally failed to allege damages that amount to a cognizable harm. Therefore, Plaintiff has not sufficiently pled a substantive due process violation and the court grants Defendants' motion to dismiss on this claim.

### 1. FORESEEABLE AND FAIRLY DIRECT HARM

The Supreme Court has held that there must be a sufficiently close nexus between the defendant's conduct and the plaintiff's alleged due process violation to

---

[66] 42 U.S.C. § 1983.
[67] *Kniepp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir. 1996).
[68] *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 907 (3d Cir. 1997).
[69] *Id.*
[70] *L.R. v. Sch. Dist. of Phila.,* 836 F.3d 235, 242 (3d Cir. 2016).

establish a State-Created Danger claim.[71] The complaint must plead a direct causal relationship between the defendant's affirmative act and plaintiff's harm.[72] Additionally, a plaintiff must allege the defendant had actual knowledge or an awareness of the risk that is sufficiently concrete such that he was on notice of the potential for harm.[73]

Plaintiff alleges that Defendants had actual knowledge of the risk to Plaintiff and additionally that the harm caused was both foreseeable and direct.[74] Plaintiff contends that the risk of danger at JTVCC was brought to Defendants' attention by the 2005 Executive Task Force Report.[75] Moreover, Plaintiff notes JTVCC was the focus of the Report and thus, as an employee of that facility, he was a foreseeable victim to the danger.[76]

Plaintiff asserts that Defendants' failure to implement the recommendations of the Task Force was the direct and foreseeable cause of his alleged harm.[77] He argues, if Defendants had implemented the recommendations of the Task Force, the likelihood of the inmate takeover would have decreased dramatically; therefore, Plaintiff would not have been forced into lockdown, subjected to emotional distress, asked to speak to the News Journal about his experiences, and would have never been terminated from his position.[78]

Alternatively, Defendants counter that the asserted chain of causation is far from

---

[71] *Kniepp*, 95 F.3d at 1206 (citing *Martinez v. California,* 444 U.S. 277 (1980).
[72] *Phillips of Cty. of Allegheny,* 515 F.3d 224, 236-37 (3d Cir. 2008).
[73] *Id.* at 237.
[74] D.I. 18 at 94.
[75] *Id.*
[76] *Id.*
[77] *Id.* at 90.
[78] *Id.*

11

direct and too attenuated to be reasonably construed as foreseeable.[79] Defendants contend that Plaintiff's decision to violate the State communication policies by speaking with the press and posting on social media about the inmate take over was an intervening and unforeseeable act.[80] Thus, Defendants argue that Plaintiff can prove no set of facts which will provide the necessary direct causal connection to his damages.[81]

Furthermore, Defendants contend that even if Plaintiff's emotional damages were held to be a direct result of the uprising itself, this harm was not foreseeable by the Department of Corrections.[82] They note that Plaintiff was in a separate building from where the riot occured and his only exposure to the riot was via radio conversations which any member of the public could hear.[83] Defendants further argue that the alleged damage of emotional distress is not a cognizable harm under a substantive due process theory.[84] To support this argument, Defendants note that a successful plaintiff in nearly all State-Created Danger cases either died or suffered severe physical injury.[85]

This court agrees with Defendants that the asserted chain of causation is too attenuated to satisfy the requirement that the harm be direct and foreseeable. Plaintiff's decision to speak with the reporter and post about the takeover on social media was an intervening act that prevents Defendants' failure to implement the Report recommendations from being held as the proximate cause of Plaintiff's injuries.

---

[79] D.I. 27 at 135.
[80] *Id.* at 136.
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] D.I. 31 at 155.

Furthermore, because Plaintiff was in an entirely separate building from where the takeover happened, his harm was not foreseeable to Defendants as a result of the riot. Therefore, Plaintiff has not sufficiently alleged that the harm he incurred was a direct and foreseeable result of Defendants' actions.

As Defendants argued that Plaintiff failed to properly plead the first element of a State-Created Danger claim, they did not specifically address the remaining three elements in their motion to dismiss. This court holds that Plaintiff has failed to properly assert the remaining three required elements for the reasons briefly discussed below.

### 2. CONSCIENCE-SHOCKING CONDUCT

The Due Process Clause is violated only when action by the state is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[86] The standard for judging whether action can be characterized as arbitrary is dependant on the time in which the government actor had to respond to the particular risk of harm.[87] Where officials are forced to make a split-second decision, the level of culpability required to "shock the conscience" must be an intent to cause harm.[88] Alternatively, where officials have the time to make unhurried judgments, deliberate indifference is sufficient to support an allegation of culpability.[89] Mere negligent acts cannot support a State-Created Danger claim, and the state's actions must show a willingness to ignore a foreseeable danger or risk.[90]

---

[86] *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998).
[87] *Phillips*, 515 F.3d at 240.
[88] *Id.*
[89] *Id.*
[90] *Morse*, 132 F.3d at 910-11.

Plaintiff contends that Defendants acted with a degree of culpability that shocked the conscience because they had been warned on multiple occasions of the dangerous conditions inside JTVCC.[91] Plaintiff asserts the 2005 security breakdown at JTVCC put Defendants on notice of the possibility for further harm.[92] Plaintiff argues because Defendants were aware of the dangerous conditions, their failure to act indicates a willful disregard for Plaintiffs safety.[93]

As Defendants' decisions regarding safety at the jail purportedly started after the 2005 security breakdown and Report, the appropriate standard here is deliberate indifference. Although Defendants' actions, or omission to act, may be characterized as negligent, it cannot be said to "shock the conscience" as is required to satisfy this element. As further discussed in the proceeding section, the risk faced by Plaintiff was inherent to his service as an employee at the jail. Accordingly, even if Defendants' failure to implement some of the Report recommendations contributed to the dangerous condition, this does not form a valid basis for Plaintiff's substantive due process claim.

### 3.  FORESEEABLE VICTIM

It must be alleged that the state acted in a way to leave a discrete plaintiff vulnerable to a foreseeable injury.[94] A discrete plaintiff may mean a specific person or a specific class of persons, depending on the facts of the case.[95] The proper inquiry is whether the plaintiff was a foreseeable victim to the particular harm.[96]

---

[91] D.I. 18 at 94.
[92] D.I. 30 at 147.
[93] *Id.*
[94] *Id.* at 912.
[95] *Id.*
[96] *Id.* at 912-13.

Plaintiff alleges he was foreseeable victim of Defendants' actions because he was a Department of Education employee, working at JTVCC, a prison operated by the Defendants.[97] He claims that as a member of the class of employees working in direct contact with inmates at JTVCC, he was a foreseeable victim which satisfies the third element.[98]

However, this is not the type of relationship which is protected by a substantive due process claim. In *Collins v. City of Harker Heights, Tex.,* the Supreme Court emphasized the established principle that the Constitution does not guarantee public employees a safe working environment.[99] The court reiterated the importance of refraining from importing traditional tort law into the Due Process Clause.[100] Although under state tort law, an employer may have a duty to provide a workplace free from unreasonable risks of harm, the Supreme Court has repeatedly warned "that §1983 must not be used to duplicate state tort law on the federal level[.]"[101]

In *Kaucher v. County of Bucks*, the Third Circuit relied on *Collins* to dismiss a §1983 claim, based on the State-Created Danger Theory, brought by a correctional officer who contracted a staph infection at the facility where he was employed.[102] The officer claimed he contracted the infection as a result of the defendants' behavior in

---

[97] D.I. 30 at 148.
[98] *Id.*
[99] *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 129 (1992).
[100] *Id.* at 128.
[101] *Kaucher v. County of Bucks,* 455 F.3d 224, 436 (3d Cir. 2006), Citing *Washington v. District of Columbia,* 802 F.2d 1478, 1480 (Ct. of App. D.C. 1986) (holding prison officials' failure to provide safe prison conditions did not form the basis of a substantive due process claim where prison guard was attacked by unstable prisoner).
[102] *Kaucher v. County of Bucks,* 455 F.3d 224, 420 (3d Cir. 2006).

creating unsanitary and dangerous conditions at the jail.[103] The court noted that this was a risk incident to his service as an employee of which the plaintiff was on notice from the outset of his employment.[104]

Although these cases focused on substantive due process claims generally, they support the position that the employer-employee relationship relied on by Plaintiff is insufficient to support a §1983 claim. Moreover, similarly to the plaintiff in *Kaucher*, Plaintiff did not allege he was threatened with discharge if he failed to confront a particular danger. By accepting his position at the prison, he was aware of the danger presented from working in this environment and was free to leave at any time. Thus, this situation is distinguishable from the custodial relationships that normally give rise to state duty under §1983 and Plaintiff has failed to satisfy the third element of a State-Created Danger claim.[105]

### 4. AFFIRMATIVE USE OF AUTHORITY CREATING DANGER

A plaintiff must also allege that the state actor used his authority to create an opportunity for the third-party's offense to occur that would otherwise not have existed.[106] Although the particular standards for this element vary among the courts, Third Circuit jurisprudence requires a plaintiff to allege an affirmative action on the part of the state actor, rather than inaction or omission.[107] Thus, the inquiry is whether the defendant affirmatively acted to create the plaintiff's danger, or to render him or her

---

[103] *Id.*
[104] *Id.* at 430.
[105] See *Wallace v. Adkins,* 115 F.3d 427, 429 (7th Cir. 1997).
[106] *Kneipp*, 95 F.3d at 1208.
[107] *Phillips*, 515 F.3d at 235.

16

more vulnerable to it.[108]

Courts have often held that liability under the State-Created danger theory is predicated upon "the states' affirmative acts which work to plaintiffs' detriments in terms of exposure to danger."[109] In *D.R.*, the Third Circuit followed the Supreme Court's reasoning in *Deshaney v. Winnebago County Dep't of Social Services*,[110] in holding that although the state actors "stood by and did nothing when suspicious circumstances dictated a more active role for them[,]" this failure to act was not sufficient to impose liability.[111] In *Deshaney*, the Supreme Court denied imposing liability on the state, notwithstanding that the state may have been aware of the dangers faced by the plaintiff.[112] However, because the state played no part in the creation of the danger, nor did it affirmatively act to render the plaintiff more vulnerable to it, the court found that the §1983 claim could not be upheld.[113]

Plaintiff maintains that Defendants, by their actions, rendered him more vulnerable to and increased the risk of harm he faced as an employee working in JTVCC.[114] He points to the 2005 Executive Task Force Report recommendation that the State reduce the excessive amount of overtime the DOC used to compensate for the shortage of security personnel.[115] Plaintiff asserts that Defendants ignored this

---

[108] *Kneipp,* 95 F.3d at 1207.
[109] *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992).
[110] 489 U.S. 189, 203 (1989).
[111] *D.R.*, 972 F.2d at 1376.
[112] *Deshaney,* 489 U.S. at 201.
[113] *Id.*
[114] D.I. 30 at 149.
[115] *Id.* at 148.

17

recommendation and affirmatively enacted a policy to rely more heavily on overtime for its corrections officers.[116] He alleges this policy created a foreseeably dangerous situation creating an opportunity for the inmate take over to occur that otherwise would not have existed.[117]

Although the implication for this purported policy may be questionable, it is insufficient to satisfy the criteria for the fourth element of this §1983 claim. There must be a direct causal relationship between the affirmative act and the plaintiff's harm.[118] Plaintiff failed to allege this kind of direct causation, since he has not pled that Defendants' enactment of this policy was the direct cause of the inmate takeover.

Therefore, Plaintiff has failed to properly allege all four required elements of the State-Created Danger Theory of liability under §1983.

## IV.   CONCLUSION

For the foregoing reasons,

1.   Defendants' motion to dismiss Count IV of Plaintiff's First Amended Complaint (D.I. 27) is **GRANTED**.


Dated: July 24, 2018                                          /s/ Mary Pat Thynge
                                                              Chief U.S. Magistrate Judge

---

[116] *Id.* at 149-49.
[117] *Id.* at 149.
[118] *Kaucher*, 455 F.3d at 432.